Mr. Chief Justice Shaekey
delivered the opinion of the court.
The plaintiff brought an action of ejectment, and in deraign-ing title, introduced a patent from the United States to Is-ta-ha-cha, from the face of which it appears that the patentee was a Chickasaw Indian, and that the land was acquired by him as a reserve, under the fifth article of the treaty of 1834, out of the lands ceded at Pontotoc in 1832. He then offered to introduce a deed from the patentee to Littlebury Leftwich, for the land mentioned in the patent, bearing date the 18th of October, 1837, which was ruled out, and on such ruling the case comes up. Attached to the deed is the certificate of Henry Love and Benjamin Love to the effect, that the grantor was capable of managing his own affairs; and also the certificate of the agent, that the fact certified to by Henry and Benjamin Love was true, and that a fair consideration had been paid for the land. But there is no evidence that the sale was approved by the President of the United States, and the question is, whether this is such a defect as justified the ruling out of the deed.
*427 The fourth article of the treaty, with a view to the protection of that portion of the Indians admitted to be incapable of taking care of their affairs, provides, that the reservations therein admitted, “ shall not be permitted to be sold, leased, or disposed of, unless it appear by the certificate of at least two of the following named persons, to wit, Ish-ta-ha-to-pa (the king) Levi Colbert, George Colbert, Martin Colbert, Isaac Albertson, Henry Love, of which five have signed their names to this treaty, that the party owning or claiming the same is capable to manage and take care of his affairs, which fact, to the best of his knowledge or information, shall be certified by the agent; and furthermore, that a fair consideration has been paid, and thereupon the deed of conveyance shall be valid, provided, the President of the United States, or such other person as he may appoint, shall approve the same and indorse it on the deed.” There seems to be no way of dispensing with the approval of the President. It is a treaty of stipulations, and constitutes a con.dition precedent to a perfect title. Until that is obtained, the title cannot be said to be executed. It is the law of the property; it must be conveyed in a prescribed form, or no legal title passes. The Indians themselves thought proper to place this restraint on the power of alienation. It is not .for us to say whether it was wise or unwise, necessary or unnecessary. It is a positive provision in a paramount law, and there is no way of arguing against it. As well might we say that the other certificates were unnecessary, and thus wipe out an important provision in the treaty. And on the same principle might we reject whatever seemed to us unwise or unnecessary in legislative enactments. It is enough for us to know that this is the law prescribed by competent authority.
In the case of Pointer v. Trotter, 10 S. & M. 537, we decided that a conveyance by one of the persons appointed by the treaty, to certify as to the capability of others, to wit, Henry Love, was not within the spirit and meaning of this provision. But at the same time we said, the certificates constituted prerequisites to a good title, as a general rule. By reference to that case, it will be seen on what ground the' exception was placed. In Niles v. *428 Anderson, 5 How. 384, a case depending on this same article of the treaty, we said, “ these were all conditions to be performed, in order to a perfect conveyance from the Indians,” and for want of these certificates the vendee of the Indian was held to have only an equitable title. This case seems to settle the pre-. sent question. If the certificate of approval of the President is not necessary, the other certificates are also unnecessary, and the title is perfect without them. But we held it to be imperfect without them.
It has been insisted, that the Indian acquired an absolute title by the treaty, according to the decisions fin Newman v. Harris & Plummer, 4 How. and Niles v. Anderson, and that no limit to the power of alienation could be imposed. But the power to impose these restrictions has never been questioned as far as we know. In Niles v. Anderson, we said that it was competent to impose the restrictions by the treaty. The power to alienate is but an incident to the ownership of the soil, and the supreme power may always prescribe the forms and ceremonies to be observed in alienating. As well might it be contended that any citizen of the state can dispose of his realty, regardless of all statute provisions. Thinking, then, that the deed was properly executed, the judgment must be affirmed.